Filed 9/4/20  P. v. Geradian CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073272 |
| v. | (Super.Ct.No. FWV19001074) |
| JOHN ALAN GERADIAN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Jon D. Ferguson and Katrina West, Judges.  Affirmed as modified with directions.

Erica Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

1

INTRODUCTION

Defendant and appellant John Alan Geradian was convicted of one count of battery with injury on a peace officer in violation of Penal Code[1] section 243, subdivision (c)(2), and two counts of resisting an executive officer in violation of section 69. He was sentenced to three years for the battery and concurrent three-year terms for each of the resisting an officer counts.

Defendant raises two contentions on appeal: (1) there was insufficient evidence to sustain the battery conviction; and (2) the sentence on one of the resisting an officer counts should have been stayed under section 654. We agree that the sentence on one of the resisting an officer counts should have been stayed under section 654 and otherwise affirm the judgment.

I.

FACTUAL AND PROCEDURAL HISTORY OF THE CASE

A.    *Facts*

On March 31, 2019, sheriff's deputy W.S. responded to a department store in Rancho Cucamonga. When he arrived, defendant was in the automotive department arguing with a store employee. Deputy S. approached them and asked what was going on. Defendant was wearing a bulky black coat that extended to his mid-thigh. Deputy S. patted defendant down to check for weapons, then asked defendant for identification.

_____

[1] All further statutory references are to the Penal Code.

Defendant gave Deputy S. his identification and the deputy provided the information to dispatch.

Deputy S. then told defendant he would be searching him a second time. He asked defendant to turn around and put his hands behind his back. The parties stipulated Deputy S.'s detention and both searches of defendant were lawful. Defendant turned around as requested and put his hands behind his back. He asked Deputy S. not to put him in handcuffs because he had not broken the law. Deputy S. grabbed defendant's wrists and felt defendant tense up, so the deputy reached for his handcuffs. As he did that, defendant turned back around to face the deputy and put his fists up in a fighting stance. Deputy S. called for backup. Defendant's fists were at chest level. The deputy grabbed defendant's wrists and told him two or three times to turn around and put his hands behind his back. Defendant did not comply. Deputy S. took defendant to the ground and continued telling him to stop resisting and to give him his hands. Defendant's hands were underneath his body. He was kicking around trying to push up off the floor.

When sheriff's deputy R.M. arrived, Deputy S. was on the ground trying to handcuff defendant with the assistance of two loss prevention employees. Deputy M. ran over to help. The deputies told defendant multiple times to stop resisting and to put his hands behind his back. It took about two minutes to get the handcuffs on defendant. Deputy S. single-locked the handcuffs, meaning the handcuffs could get tighter as

3

defendant moved his wrists. Double-locking the handcuffs would have prevented them from tightening.

The deputies escorted defendant out of the store in handcuffs. Defendant can be heard on an audio recording of the incident complaining of pain as they escorted him out and asking the deputies to lock the handcuffs. One of the deputies told defendant they would as soon as he "stop[ped] doing that." Defendant was not cooperating with the deputies. He was pulling away from them and yelling. He would not walk on his own. The deputies had to basically drag him out of the store. One of the deputies can be heard on the audio recording telling defendant, "walk on your own, let's go," and, "[s]top it. Come on, let's go. Stop it. Come on."

When they got outside, defendant used his body to push back and forth and against the deputies. The deputies pushed him against the patrol car to stabilize him. They told defendant to get in the car. Defendant planted his feet on the ground and refused to get in. He kicked against the car and put his shoulder against it to avoid being placed inside. Deputy M.'s face was close to defendant's body as the deputies struggled to get defendant in the patrol car. At some point during the struggle, defendant elbowed Deputy M. in the mouth, chipping the deputy's front left tooth. Deputy M. can be heard on the audio recording saying, "He just elbowed me in my fucking face." Defendant responded by saying, "I didn't elbow you in the face, how is that?" "How did I elbow you in the face," and, "Did I elbow this guy in the face?" The deputies responded by telling defendant to relax and to get in the patrol car. After they got defendant into the

4

car, Deputy S. asked Deputy M. if he was okay. Deputy M. responded, "Chipped my tooth pretty bad."

Deputy M. testified that his tooth was jagged and uncomfortable after it was chipped. He went to the dentist around a month-and-a-half later and had his tooth filed down and reshaped.

*B.*     *Proceedings*

Defendant was charged in count 1 with battery on a peace officer causing injury for elbowing Deputy M. (§ 243, subd. (c)(2).) He was charged in count 2 with resisting Deputy M. (§ 69), and in count 3 with resisting Deputy S. (§ 69). A jury convicted him of all three counts. The court sentenced defendant to the upper term of three years for battery and concurrent upper terms of three years each for the two counts of resisting an executive officer. Neither party nor the court, addressed section 654 at the sentencing hearing. The court also sentenced defendant to a consecutive term of one year (one-third the midterm of three years) for an unrelated probation violation case. Defendant timely appealed.

II.

SUFFICIENCY OF THE EVIDENCE

Defendant argues the evidence was insufficient as a matter of law to convict him of battery with injury on a peace officer because the evidence did not show that he *willfully* struck Deputy M.; rather, defendant argues, the record shows that he recklessly or accidentally struck the deputy, neither of which satisfy the intent element of battery.

5

When the defendant raises a sufficiency of the evidence claim on appeal, we "review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) "[I]t is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt." (*People v. Bean* (1988) 46 Cal.3d 919, 933.) "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.]" (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

Battery is the "willful and unlawful use of force or violence upon the person of another." (§ 242.) " 'Any harmful or offensive touching constitutes an unlawful use of force or violence' under this statute. [Citations]." (*People v. Shockley* (2013) 58 Cal.4th 400, 404.) When a battery is inflicted on a peace officer engaged in the performance of his or her duties and causes injury to the officer, the offense may be punished as a felony, provided the defendant knows or reasonably should know that the individual is a peace officer engaged in the performance of his or her duties. (§ 243, subd. (c)(2).) Injury, for purposes of the offense, is defined as a physical injury that requires professional medical treatment. (§ 243, subd. (f)(5).)

Battery is a general intent crime that requires the defendant to act *willfully*. (*People v. Lara* (1996) 44 Cal.App.4th 102, 107; § 242.) As with all general intent

6

crimes, the required mental state entails only an intent to do the act that causes the harm, not to achieve any additional consequence. (*People v. Davis* (1995) 10 Cal.4th 463, 518, fn. 15.) "The word 'willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage." (§ 7, subd. (1).) A person acts willfully when he " ' " 'knows what he is doing, intends to do what he is doing and is a free agent.' " ' " (*People v. Atkins* (2001) 25 Cal.4th 76, 85.)

Applying these authorities to the present case, to satisfy the element of willfulness the evidence needed to show that defendant intended to harmfully or offensively touch the officer. In other words, it needed to show that he intentionally struck the officer. It did not need to show that he intended to injure the officer.

Here, the evidence showed that defendant was doing anything he could to avoid being handcuffed and placed into the patrol car, including physically struggling with the deputies. Inside the store, defendant put his fists up in a fighting stance towards Deputy S., after which it took four men—two deputies and two loss prevention employees— nearly two minutes to handcuff him. Defendant then refused to walk out of the store and had to be dragged out by the deputies. When they got outside, he refused to get in the patrol car. He used his body to push back and forth against the deputies. He planted his feet on the ground, kicked against the car, and put his shoulder against the car to avoid being placed inside. He then elbowed Deputy M. in the face hard enough to chip his

7

tooth. From this evidence, the jury could reasonably have concluded that elbowing Deputy M. was one of the many intentional physical acts of struggle defendant engaged in with the deputies to avoid being placed into the patrol car.

Defendant argues the evidence only showed he recklessly or accidentally struck the deputy. (*People v. Lara*, *supra*, 44 Cal.App.4th at p. 107 [" 'Reckless conduct alone does not constitute a sufficient basis for . . . battery. . . .' "].) This was one possible interpretation of the evidence, but it was not the only one. (See *People v. Castaneda* (2011) 51 Cal.4th 1292, 1325 ["defendant's alternative inferences do not render insufficient the substantial evidence of his commission" of the crime].) "[When] the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.]" (*People v. Lindberg*, *supra*, 45 Cal.4th at p. 27.) Accordingly, we affirm the defendant's conviction for battery with injury on a peace officer.

## III.

## APPLICATION OF SECTION 654 TO COUNT 2

Defendant next contends his sentence for resisting Deputy M. (count 2) should be stayed under section 654, rather than run concurrently, because it occurred during the same course of conduct as the battery with injury on Deputy M. (count 1) and he only had a single objective in committing both offenses—to resist the officer.

8

Defendant did not raise an objection under section 654 at the sentencing hearing, but it is settled that questions involving the applicability of section 654 can be raised for the first time on appeal. (*People v. Hester* (2000) 22 Cal.4th 290, 295.) Respondent does not argue otherwise.

Section 654 precludes multiple punishment for a single act or omission, or an indivisible course of conduct. (*People v. Deloza* (1998) 18 Cal.4th 585, 591.) It provides in relevant part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) The purpose of the statute is to ensure that punishment is commensurate with a defendant's culpability. (*People v. Perez* (1979) 23 Cal.3d 545, 552.)

To determine whether a course of conduct that violates more than one statute is subject to section 654's proscription on multiple punishment, the court must assess the intent and objective of the actor. " 'If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' " (*People v. Rodriguez* (2009) 47 Cal.4th 501, 507.) "On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for the independent violations committed in pursuit of each objective even though the violations

were parts of an otherwise indivisible course of conduct. [Citations.]" (*People v. Perez, supra*, 23 Cal.3d at pp. 551-552, fn. omitted.)

" 'The defendant's intent and objective are factual questions for the trial court; [to permit multiple punishments,] there must be evidence to support a finding the defendant formed a separate intent and objective for each offense for which he was sentenced. [Citation.]' " (*People v. Coleman* (1989) 48 Cal.3d 112, 162.) "When a trial court sentences a defendant to separate terms without making an express finding the defendant entertained separate objectives, the trial court is deemed to have made an implied finding each offense had a separate objective. [Citation.]" (*People v. Islas* (2012) 210 Cal.App.4th 116, 129.)

The conduct at issue here—defendant's resisting and elbowing of Deputy M.— was part of a single course of conduct. Defendant began resisting the deputies inside the store and did not stop until they were able to forcibly place him in the patrol car. It was during the course of defendant's struggle with the deputies at the patrol car that he elbowed Deputy M. in the face. We agree with defendant that there was not evidence in the record to show his objective in elbowing the deputy was for any purpose other than to avoid being arrested and placed into the patrol car.

*People v. Martin* (2005) 133 Cal.App.4th 776, 780, presents a similar factual scenario. In *Martin,* the defendant struggled with four officers while he was being arrested. One officer attempted to restrain the defendant and was injured when the defendant wrapped his legs around the officer's leg and jerked his body backward.

(*Ibid*.)  Another officer then knocked the defendant to the ground, where he flailed around and kicked at the officers who were trying to control his lower body.  It took all four officers to restrain him.  (*Ibid*.)  Like the present case, the defendant in *Martin* was convicted and sentenced concurrently for battery with injury on a peace officer (§ 243, subd. (c)(2)) and resisting an executive officer (§ 69).  (*Martin*, at p. 779.)  On appeal, he argued that section 654 prohibited punishment on both offenses because his sole objective in committing the offenses was to escape.  (*Martin*, at p. 780.)  The court agreed, stating, "[t]he battery upon the officer does not appear to have been intentional, but merely the result of appellant's physical gyrations aimed at freeing himself.  The two offenses occurred, if not concurrently, in close temporal proximity, which although not determinative on the question of whether there was a single objective, is a relevant consideration.  [Citation.]  Hence, we conclude that section 654 applies . . . ."  (*Id*. at p. 781.)[2]

Like *Martin*, the record here shows defendant committed the battery during the course of resisting the officers.  While the evidence was sufficient to show defendant willfully elbowed Deputy M. (as addressed *ante*), it did not show that he did so for any objective other than to resist the arrest.

Respondent contends defendant had separate intents for the offenses:  to prevent the deputies from arresting him and to cause injury to Deputy M.  As evidence of this,

---

[2] The *Martin* court went on to affirm the defendant's sentence based on the multiple victim exception to section 654, which does not apply here because Deputy M. was the named victim in both counts at issue.  (*People v. Martin*, *supra*, 133 Cal.App.4th at pp. 782-783.)

respondent contends defendant's act of elbowing the deputy was not essential to the commission of the resisting offense but was a gratuitous, independent act of violence for which the court properly imposed a concurrent sentence.

We disagree. Section 69, of which defendant was convicted in count 2, penalizes a person "who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law, or who knowingly resists, by the use of force or violence, the officer, in the performance of his or her duty." (§ 69, subd. (a).) The statute is designed to protect law enforcement officers against violent interference with the performance of their duties. (*People v. Martin*, *supra*, 133 Cal.App.4th at p. 782.) Defendant's conduct in elbowing Deputy M. was not a gratuitous, independent act of violence; it was an element of the offense. It was both a battery on the officer and a means defendant used to resist the officer. (See *People v. Rodriguez* (2015) 235 Cal.App.4th 1000, 1006 [section 654 applies where a defendant commits one crime as the means of perpetrating another crime].)

In sum, to permit multiple punishment under section 654, there must be evidence to support the court's finding that the defendant formed a separate intent and objective for each offense for which he was sentenced. (*People v. Coleman*, *supra*, 48 Cal.3d at p. 162.) Here, no evidence was presented to support the trial court's implied finding that defendant intended to injure Deputy M. separate and apart from his resisting arrest. Accordingly, we conclude that the trial court erred imposing count 2 concurrently, rather than staying the execution of the sentence under section 654. (*People v. Jones* (2012) 54

12

Cal.4th 350, 353 [section 654's proscription on multiple punishment includes the imposition of concurrent sentences].) We therefore modify the judgment to stay the execution of count 2 pursuant to section 654.

## VI.

## ABSTRACT OF JUDGMENT

Finally, we note that the abstract of judgment does not correctly reflect the sentence imposed by the trial court and order it corrected. (*People v. Mitchell* (2001) 26 Cal.4th 181, 186-187 [an appellate court may order correction of clerical errors in the abstract of judgment on its own motion].)

The abstract of judgment incorrectly reflects that the court imposed the low term of three years on counts 1 through 3, when it should reflect the court imposed the upper term of three years on those counts. It also does not reflect that the one-year sentence imposed in the probation violation case was a one-third consecutive term. Finally, it incorrectly reflects that the conviction in the present case was based on a plea, not a jury trial. Accordingly, we order the abstract of judgment be corrected to properly reflect the sentence imposed by the trial court and to reflect that the present case involved a jury trial.

V.

DISPOSITION

The judgment is modified to stay the execution of the sentence imposed on count 2 pursuant to section 654.  The trial court is directed to amend the abstract of judgment to reflect the judgment as modified, to correct the errors identified in section IV of the discussion, and to forward a certified copy of the amended/corrected abstract of judgment to the Department of Corrections and Rehabilitation.  As so modified, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

CODRINGTON
J.

RAPHAEL
J.

14